# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **J.N.-1**

**No. 17-0650** (Mineral County 16-JA-7)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, J.N.-2, by counsel Jeremy B. Cooper, appeals the Circuit Court of Mineral County's June 21, 2017, order terminating his parental rights to J.N.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardians ad litem ("guardians"), Kelley A. Kuhn and Meredith H. Haines, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR received a referral that petitioner's child, J.N.-1 had access to firearms in the home. During a visit to the home, a DHHR employee observed the three-year-old child point an unloaded gun at someone and pull the trigger. The mother, who was present at the time, told the DHHR employee that the child usually does not bother the guns and it was not a concern. J.N.-1 then reappeared from around a corner in the home with a rifle. The child aimed the rifle and then pulled the trigger. Several days after these incidents, another DHHR employee conducted a home visit of petitioner's home and observed several safety concerns in the home, including animal waste, lack of heat, and firearms accessible to the child. Based upon these concerns, the DHHR initiated a safety plan, to which both parents agreed. The child stayed with his maternal grandmother while his parents worked to correct these problems. Approximately ten days after the safety plan had been initiated, the DHHR worker returned to the home and found that the parents had sufficiently corrected the safety issues and the child was

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as J.N.-1 and J.N.-2, respectively, throughout this memorandum decision.

returned to their care. However, upon returning to the home a few days later, the DHHR worker observed the child reaching into an unlocked gun cabinet to try to remove a firearm. After that incident, the DHHR implemented services including adult life skills, individualized parenting training, and supervision services.

In February of 2016, while a service provider was at the home, the child obtained a gun from his parents' bedroom and pointed it at the service provider. Thereafter, the DHHR filed a petition alleging abuse and neglect setting forth the previous allegations and the child was again removed and placed with his maternal grandmother. However, the DHHR agreed that if petitioner could correct the issue of J.N.-1 having access to firearms by February 26, 2016, physical custody of the child would be returned to the parents. Petitioner corrected the issue to the satisfaction of the service provider and the child was returned to his home, pending the adjudicatory hearing. In March of 2016, the circuit court held an adjudicatory hearing at which petitioner's motion for a preadjudicatory improvement period was granted.

In May of 2016, the DHHR filed an amended petition alleging that petitioner failed to cooperate with an assessment for services, the home was found to be in worse condition than before, which included exposed wiring, black mold, and other safety issues. The amended petition also alleged that petitioner had anger issues, untreated bipolar disorder, and threatened to "kill everyone and burn them all out." "Everyone" included the DHHR workers and others involved in the abuse and neglect proceedings. Additionally, there were concerns of domestic violence between petitioner and the mother. The DHHR implemented a safety plan wherein the family moved in with the maternal grandmother and adult life skills services were implemented to assist the family in finding suitable housing. Pursuant to the plan, petitioner was to enroll the child in school and speech services and to complete psychological evaluations. However, petitioner did not comply. Petitioner waved his preliminary hearing on the amended petition.

In June of 2016, the circuit court held an adjudicatory hearing on the amended petition. Petitioner stipulated that the child was endangered by his access to firearms in the home, and that petitioner had anger issues which impeded efforts to implement services, and that he failed to make proper parenting decisions in allowing his three-year-old child to access firearms in the home. Petitioner was granted a six-month post-adjudicatory improvement period. In October of 2016, the circuit court held a status hearing wherein it found petitioner was complying with his post-adjudicatory improvement period. Petitioner and the mother divorced in December of 2016.[2]

In April of 2017, the circuit court held a status hearing regarding petitioner's post-adjudicatory improvement period. Petitioner did not appear; however, he was represented by counsel. According to the DHHR, petitioner's new girlfriend was granted a protective order against petitioner based upon his acts of domestic violence. It was also reported that petitioner had stopped complying with services and was seen with the child's mother after her parental rights were terminated. Based upon these issues, the circuit court scheduled the matter for disposition.

---

[2]In January of 2017, the circuit court terminated the mother's improvement period, and in February of 2017, terminated her parental rights.

In June of 2017, the circuit court held a dispositional hearing. Petitioner did not appear, but was represented by counsel. Petitioner's counsel indicated no knowledge of petitioner's whereabouts. Petitioner's now former girlfriend testified regarding domestic violence that occurred between the two. She testified that their relationship ended when petitioner became enraged, threw her television, smashed things, cut his own arm with a knife, and pushed her son. She further testified that, as a result of this incident, she was granted a domestic violence protective order against petitioner. She also testified that after the protective order was granted, petitioner continued to call her and leave her messages in which he threatened to hurt her and her children if she testified against him in these abuse and neglect proceedings.

The circuit court also heard testimony from the former service provider, who testified that petitioner complied with services and made progress with his anger issues, but missed multiple sessions, and eventually services ended because petitioner had no residence where services could occur. Finally, a caseworker testified that petitioner failed to make substantial progress in his improvement period. She testified that, although petitioner completed the batterer's intervention course and anger management counseling, his behaviors demonstrated that he failed to make meaningful changes. The caseworker specifically referenced his acts of violence towards his former girlfriend and her son, his unstable living situation, and his continued threats to various individuals. She further testified that service providers were afraid of petitioner and that the parenting provider opted to wait for petitioner to complete anger management and batterer's intervention classes before sending a staff member to work with him. The circuit court found that although petitioner complied with services and completed anger management and batterer's intervention classes, he did not make substantial improvement in correcting the issues of abuse and neglect, as evidenced by his continued aggressive and threatening actions. The circuit court further found that additional services would not likely benefit petitioner and that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Ultimately, the circuit court terminated petitioner's parental rights in its June 21, 2017, order.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[3]Due to the termination of both parents' parental rights, according to the guardians and the DHHR, the child is placed in a foster home with a goal of adoption in that home.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's proceedings below.

In his sole assignment of error, petitioner argues that the circuit court erred in terminating his parental rights instead of granting him a post-dispositional improvement period. In support of his argument, petitioner asserts that the circuit court was required to give precedence to other, less restrictive dispositions prior to ordering involuntary termination. Petitioner further argues that he completed anger management and batterer's intervention classes, substantially participated in parenting classes, and received positive reports concerning visitation with his son. We find, however, that termination of petitioner's parental rights without first granting a post-dispositional improvement period was appropriate.

In order to obtain a post-dispositional improvement period when another improvement period was previously granted, West Virginia Code § 49-4-610(3)(D) requires a parent to "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances." Further, the statute requires that the parent "shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period[.]" Id.

Here, petitioner does not claim any change in circumstances since his post-adjudicatory improvement period to demonstrate that, due to that change in circumstances, he would be likely to fully participate in a post-dispositional improvement period. Instead, petitioner only asserts that the child's mother's parental rights were terminated. The termination of the child's mother's parental rights is irrelevant as to whether petitioner should be granted a post-adjudicatory improvement period. Further, the record on appeal shows that since he divorced the child's mother in December of 2016, and since her rights were terminated in February of 2017, petitioner's aggressive and violent behavior only got worse. The record shows that after his divorce from his wife, petitioner perpetrated violence against his new girlfriend and her son, which resulted in a domestic violence protective order against him. Based on this evidence, petitioner did not demonstrate that he was likely to substantially comply with the terms and conditions of a post-dispositional improvement period due to a change in circumstances and, therefore, the circuit court did not err in denying petitioner a post-dispositional improvement period.

Additionally, the record indicates that petitioner complied with services and completed anger management and batterer's intervention classes, but he did not make substantial improvement in correcting the issues of abuse and neglect, as evidenced by his continued aggressive and threatening actions. Petitioner also failed to improve his unstable living situation, and in fact, services ceased because he had no home in which to receive services. We have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014).

4

Further, West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Here, it is clear that there was no reasonable likelihood that petitioner could have substantially corrected the conditions of abuse or neglect in the near future. As discussed above, petitioner failed to benefit from services and continued to exhibit violent and threatening behavior. Further, he failed to improve his living situation and failed to make any substantial progress during his post-adjudicatory improvement period. Moreover, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. As previously stated, pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings.

Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 21, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5